THOMAS DALE LARUE, EMPLOYEE v. AUSTIN-BERRYHILL, INC., EMPLOYER; UNITED STATES FIDELITY AND GUARANTY COMPANY, INSURER

No. 7518IC61

(Filed 16 April 1975)

1. **Master and Servant § 96— workmen's compensation — findings of Industrial Commission — conclusiveness**

Findings of fact by the Industrial Commission which are nonjurisdictional are conclusive on appeal when supported by competent evidence, even though there is evidence that would support findings to the contrary.

2. **Master and Servant § 60— employee engaged in personal mission — no accident arising out of and in course of employment**

The evidence supported the Industrial Commission's finding that plaintiff's accident, injuries, and resulting disability did not arise out of and in the course of his employment where such evidence tended to show that plaintiff lived in Greensboro but was working on a job site in Wallace when his accident occurred, plaintiff worked a full day for his employer, spent time playing cards with his friends, then left the area at 10:30 or 11:00 to return to Greensboro, plaintiff did not intend to work the next day but had asked and been given permission to be off so that he might be in traffic court in Greensboro to answer a charge of speeding, and plaintiff was operating his own car at his own expense for his own personal business at the time of the accident.

APPEAL by plaintiff from the North Carolina Industrial Commission. Order entered 31 October 1974. Heard in the Court of Appeals 21 March 1975.

This is an appeal from an order of the North Carolina Industrial Commission denying compensation to an injured and disabled employee. The Commission made the following pertinent findings of fact:

"3. Defendant employer's employees fall into the categories of office, shop and field employees.

4. The shop employees manufacture defendant employer's product. The field employees install defendant employer's product.

5. Defendant employer enters into contracts which causes the field employees to travel to the sites of installation throughout North Carolina and sometimes Virginia.

6. During December 1969 claimant was hired by defendant employer as a field employee at a wage of $2.25 per hour for a 40-hour workweek.

7. Claimant quit work during June 1970. He was rehired three or four weeks later at a wage of $3.00 per hour.

8. Prior to September 1969 defendant employer paid $2.00 daily for expenses when the job site was within 50 miles of Greensboro. When the job site was 50 miles distance or more from Greensboro employees received as travel expenses reimbursement for motel bill and two meals a day. Reimbursement for travel expenses ceased in September 1969 because the field employees were abusing the motel bill and two meals per day arrangement. An across-the-board raise was granted when defendant employer ceased to pay travel expenses.

9. Field employees of defendant employer worked ten hours daily four days a week. The field employees were paid full wages while traveling to the job site on Monday morning and from the job site on Thursday afternoon. They were paid full wages when traveling from job site to job site during the week.

10. On Monday mornings eight or ten field employees left defendant employer's place of business in Greensboro en route to the job site. Some of the employees rode on the company pickup truck. The others rode in privately owned vehicles.

11. As a general rule claimant drove his privately owned vehicle to and from the job site. One or more employees would ride with him.

12. Claimant lives in Greensboro and while employed by defendant employer he traveled to job sites located in Lumberton, Burlington, Mebane, Asheboro, Liberty, Wallace and on one occasion the State of Virginia.

13. Claimant was working at a job site located in Wallace, North Carolina the week beginning November 30, 1970 and had been working there for three or four weeks.

14. Claimant acquired permission from his supervisor to be absent from work on December 3, 1970 in order that

he might appear in traffic court to defend an allegation of speeding.

15. Claimant worked all day December 2, 1970 and received salary therefor. Claimant did not work December 3, 1970 and did not receive salary therefor.

16. After work on December 2, 1970 claimant had dinner and played cards with co-employees. Claimant drank a couple of beers while playing cards.

17. At 10:00 or 10:30 p.m. on December 2, 1970 claimant departed from Rose Hill in the most direct route of travel for Greensboro, some 170 miles distant.

18. Subsequent to departure from Rose Hill and while traveling west on Highway 421 near Sanford claimant's vehicle left the highway in a medium to sharp curve, turned over, and traveled 327 feet before coming to rest. Claimant heard a bang prior to leaving the highway.

19. At about 4:45 a.m. on December 3, 1970 the Sanford Rescue Squad was alerted. Claimant was found unconscious outside a 1960 Volkswagen. He was placed on an orthopedic stretcher and taken to the Lee County Hospital. He was transferred to Duke Hospital on December 3, 1970.

20. At 4:50 a.m. on December 3, 1970 State Highway Patrolman Tadlock investigated the one vehicular accident. The 1960 Volkswagen was badly mangled. Two beer cans were found near the vehicle.

21. At the time of his accident claimant was driving his own motor vehicle at his own expense and for his own personal business. Defendant employer did not pay claimant for such transportation nor furnish him such transportation.

22. Claimant did not, at the time complained of, sustain an injury by accident arising out of and in the course of his employment.

23. Claimant's accident resulted in fracture-dislocation of T-3 with paraplegia."

From an order concluding that plaintiff's injuries did not arise out of and in the course of his employment and denying compensation, plaintiff appealed.

*J. B. Winecoff and Wade C. Euliss for plaintiff appellant.*

*Horton, Conely & Michaels by Walter L. Horton, Jr., Richard B. Conely, and Robert L. Savage for defendant appellee.*

HEDRICK, Judge.

Plaintiff contends that finding of fact No. 21 "is not only contrary to the evidence but is unsupported by any competent evidence; moreover, it is inconsistent and wholly incompatible with Findings of Facts Nos. 8, 9, 10 and 11, in that Findings Nos. 8, 9, 10 and 11 show the method through which the employer was making payment for traveling." Plaintiff further contends that the Industrial Commission erred in concluding that plaintiff's injuries did not arise out of and in the course of his employment.

[1] Findings of fact by the Industrial Commission which are nonjurisdictional are conclusive on appeal when supported by competent evidence, even though there is evidence that would support findings to the contrary. *Hollman v. City of Raleigh,* 273 N.C. 240, 159 S.E. 2d 874 (1968); *Priddy v. Cab Co.,* 9 N.C. App. 291, 176 S.E. 2d 26 (1970).

[2] Finding of Fact No. 8 is of no legal significance in determining the issue of whether plaintiff's injuries arose out of and in the course of his employment. Findings 9, 10, and 11 describe how the field employees, including plaintiff, worked ten hours a day for four days (Monday through Thursday) to make a forty-hour week and how their travel time to the job site on Monday morning and from the job site on Thursday afternoon was included in the ten-hour day. These findings do not compel a conclusion that the plaintiff was being paid in any way for the trip from the job site to Greensboro on Wednesday night, December 2, or early Thursday morning, December 3. Finding No. 21 specifically and unequivocally states that plaintiff at the time of the accident "was driving his own motor vehicle at his own expense and for his own personal business." There is plenary competent evidence in the record to support this finding. Indeed, plaintiff himself testified:

"My testimony is that I left Rose Hill at around 10:00 o'clock in the evening to go to Greensboro. I was coming home; that is, I intended to go to my house whenever I got home and spend the night. And then I was going to be in

Court the next day. That trip had nothing to do with my work, only the fact that I had to get off work to make it. I explained to my foreman that I did have to be in Court and he told me that if I had to be in Court I would just have to go, and go on, and he let me off to go to Court. * * * I was expecting that I would not be paid for the Thursday that I didn't work, I didn't expect I was going to be paid for Thursday, being off from work to go to Court. Because I worked by the hour. We worked a ten hour day and four day week and got in 40 hours altogether maybe, including travel time."

We are of the opinion and so hold that finding of fact No. 21 supports the conclusion that plaintiff's tragic accident, injuries, and resulting disability did not arise out of and in the course of his employment. See, *Humphrey v. Laundry*, 251 N.C. 47, 110 S.E. 2d 467 (1959); *Alford v. Chevrolet Co.*, 246 N.C. 214, 97 S.E. 2d 869 (1957); *Ridout v. Rose's Stores, Inc.*, 205 N.C. 423, 171 S.E. 642 (1933); *Hunt v. State*, 201 N.C. 707, 161 S.E. 203 (1931); *Gay v. Supply Co.*, 15 N.C. App. 240, 189 S.E. 2d 582 (1972), cert. denied, 281 N.C. 756, 191 S.E. 2d 354 (1972).

The order appealed from is

Affirmed.

Judges BRITT and MARTIN concur.